## VIDAVER v. SHERMAN.

(Court of Appeals of District of Columbia. Submitted November 14, 1923. Decided February 5, 1924.)

### No. 1594.

Patents ⚹91 (4)—Junior party held inventor, entitled to priority.

In an interference proceeding, evidence *held* to show that a rubber company learned of the device through negotiations with junior party, and then employed senior party to work the same idea into a similar device, and that junior party was the inventor and entitled to priority.

Appeal from the Commissioner of Patents.

⚹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Interference proceeding between Maxwell Vidaver and William T. Sherman. From a decree awarding priority to the latter, the former appeals. Reversed and remanded.

George W. Dorr, of Washington, D. C., for appellant.

Frank C. Curtis, of Troy, N. Y., for appellee.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and MARTIN, Presiding Judge of the United States Court of Customs Appeals.

MARTIN, Acting Associate Justice. This is an interference proceeding in which the appellant is the junior party, he having filed his application for a patent on January 8, 1920; whereas a patent for a similar invention was issued to the appellee on December 9, 1919. The invention relates to the manufacture of bristle brushes having their bristles set in rubber pads. The device in question is an appliance whereby the rubber pads may be punctured mechanically by means of small hollow tubes filled with one or more bristles, which are first forced through the rubber and then withdrawn, whereupon the rubber contracts upon the bristles and firmly retains them in place in an upright position. The pads are then mounted upon suitable frames and are ready for use.

The following count is copied as illustrative of the invention:

Count 1. That improvement in the art of inserting bristles in an apertured elastic pad which consists in supporting the pad on one side with a plate provided with an opening opposite the aperture in the pad inserting into the aperture in the pad from its other side a bristle guiding tube, larger than said aperture, whereby said aperture is expanded, and one or more bristles within said tube, and then withdrawing the tube, leaving the bristle inserted in the aperture in the pad, and permitting the material of the pad to contract upon said inserted bristles.

The only issue in the case is that of originality, and the testimony relating to it is conflicting. We have, however, drawn the following conclusions from the evidence:

In the latter part of 1910 the Universal Brush Company was engaged in the manufacture of brushes having their bristles set in rubber pads. The operation of puncturing the pads and setting the bristles in them was performed by hand, there being then no mechanical contrivance to do this work. The labor was performed by operatives at their homes, and the system was unsatisfactory. This condition was brought to the attention of the appellant by his brother-in-law, a Mr. Koenigsberger, who was an employee of the company. The appellant was a physician and an inventor, and he then and there conceived the idea which constitutes the present invention. He took a hypodermic needle from his medicine case, cut some bristles from a brush, and placed them inside the hollow needle. He then forced the loaded needle through a common rubber band, and when it was withdrawn the rubber contracted and clutched the bristles, thus holding them securely in an upright position. The appellee and Koenigsberger regarded this as a solution of the problem. It was disclosed to several persons, and the appellant began to devise a working model of the invention. At the same time he undertook to perfect a "shaker box" to be used in connection with the

invention as a means of loading the hollow needles mechanically with bristles.

During the entire time covered by this matter Henry Alexander was the president and principal owner of the Universal Brush Company, and afterwards of its successor the Henry L. Hughes Brush Company, and his son, M. W. Alexander, was the secretary of the same; the latter being actively engaged in its management. Several meetings took place between the appellant and Henry Alexander, at which others were present. The appellant testifies that he then exhibited the shaker box and began to show how the hollow needle would operate, when Alexander said it was unnecessary to do so, as he understood it fully. This is denied by Alexander and the other persons who were present; they claiming that only the shaker box was exhibited, and that no mention was made of the use of a hollow needle. As a result of the meetings, however, a proposed contract was drafted whereby the company was to advance not more than $500 to enable the appellant to construct a working model, and was to pay him for the use of the invention, if successful. The contract, however, was never executed, but was destroyed by Alexander at the last meeting, with the statement that he would no longer deal with the appellant. Alexander explains this by stating that the appellant disclosed to him at the meeting that he had approached other brush makers upon the subject, and that this made him indignant. The appellant, however, denies this entirely, and claims that Alexander having become informed of the invention wished to use it without paying the appellant for it, and accordingly summarily dismissed him upon a feigned excuse. It may be noted that it appears from the testimony that in the latter part of 1910 Alexander's company was the only manufacturer of cushion back brushes in this country.

Notwithstanding this rebuff, the appellant completed his device, such as is described in the above counts, and in June, 1911, applied for a patent upon it. The application was allowed in September, 1911, but no patent was ever issued, because of a failure to pay the final fees. The appellant testifies that this default was due to his extreme poverty, and the testimony sustains this plea. He testifies further that afterwards, in March, 1919, he discovered by chance that the company was in fact using his invention in its factory. Thereupon on January 8, 1920, the appellant filed his present application in the Patent Office, and this proceeding in interference was ordered. The appellant testifies that his delay in filing the present application after learning that the company was using his invention resulted from advice of his counsel to the effect that it was too late to assail the Sherman patent, and that the proper remedy was an action for damages against the company. Such an action was in fact begun in April, 1919, and is still pending.

We may say at this point that we believe the appellant's foregoing statement to be true and correct. It would, however, fail to prove that the appellee, Sherman, had acquired a knowledge of appellant's invention prior to his own conception of the same idea. That defect in the proof, however, is supplied by Sherman's own testimony.

The appellee, William T. Sherman, was a skilled mechanic, who first entered the employ of the company on September 1, 1912. He had never before engaged in the manufacture of brushes, yet in his appli-

cation for his present patent he claims to have conceived the idea upon the day when he entered into the service of the company. He did not, however, complete the device until some months later. He then employed hypodermic needles, as did the appellant, as the means of setting the bristles into the rubber pads. He says that he had never seen a hypodermic needle before he procured these for his invention; that he went into a hardware store in Troy, N. Y., to buy some tubes for this purpose, when a clerk advised him to use hypodermic needles instead; that he does not remember who the clerk was, nor the store where the occurrence took place. He testifies that he was paid $1,000 by the company for his invention. A reference to the account books of the company discloses that the item is entered as payment for labor; no reference to any invention appearing in the entry. The appellee denies, as do the other witnesses who are interested in the company, that any communication was made to him in relation to the appellant's ideas or invention. It is claimed; indeed, that none of them ever learned from the appellant or otherwise that his device made use of hollow needles as carriers for the bristles in the process of setting them in the rubber pads. This statement, however, is contradicted by the testimony of a witness, Bradshaw, who states that M. W. Alexander told him in the year 1911 that the brushes could be filled by means of hollow needles, such as hypodermic needles, for inserting the bristles into the rubber pads, and that this had been suggested by a doctor who was a friend or acquaintance living in New York City.

It may be noted at this point that Koenigsberger, the brother-in-law of the appellant, who arranged the first meeting between Alexander and the appellant and was present thereat, was not called as a witness in this proceeding. He has remained an employee of the company, as well as a relative of the appellant, and his testimony was not taken by either party to the proceeding.

We do not undertake to discuss the testimony in detail. It is true that it is circumstantial in character, in so far as it relates to Sherman; but we are constrained to say that upon a review of all of it we are fully convinced that the appellant's claim is substantially true, and that the company, having learned of the appellant's device by means of the negotiations with him, proceeded to dismiss him from the transaction and to employ Sherman to work the same idea into a similar device, and that Sherman first acquired the idea of the invention from the company's officers, who had learned of it from the appellant. We therefore hold that the appellant is the original inventor, and is entitled to priority, and that the decision of the Assistant Commissioner, awarding priority to the appellee, should be and it is reversed.

The case is remanded accordingly.